# In the United States Court of Federal Claims

Case No. 11-407C
(Filed: July 24, 2012)
**NOT FOR PUBLICATION**

```
******************************************************
GSC CONSTRUCTION, INC.,              *
                    Plaintiff,       *
                                     *
        v.                           *
                                     *
THE UNITED STATES OF AMERICA,        *
                    Defendant.       *
                                     *
******************************************************
```

***William Atkins Scott,*** Pedersen & Scott, P.C., attorney of record for the Plaintiff.

***Stacey K. Grigsby,*** U.S. Department of Justice, Washington, D.C., attorney of record for the Defendant.

***Amelia Moorstein***, Law Clerk.

## OPINION

**BASKIR, Judge.**

The Plaintiff challenges the performance evaluation for its Contract No. N6945007C1770 to construct a Consolidated Medical Clinic at the Naval Weapons Station in Goose Creek, South Carolina.  In its complaint, Plaintiff alleges the Navy failed to follow required procedures in issuing the performance evaluation and that the Navy ultimately issued an evaluation that was erroneous, arbitrary, and capricious. Defendant asserts that the complaint should be dismissed for lack of standing and ripeness.  The Court **GRANTS Defendant's Motion to Dismiss** because Plaintiff never submitted a claim requesting a Contracting Officer's final decision on the final evaluation.

## BACKGROUND

I. Factual Background

The following facts are taken from the complaint and the parties' briefs.  Plaintiff was awarded Contract No. N6945007C1770 to construct a Consolidated Medical Clinic at the Naval Weapons Station in Goose Creek, South Carolina, on December 28, 2006,

for $41,590,506.00.  The contract originally had a completion date of January 27, 2009 – later extended to July 21, 2010.

On February 23, 2011, the assessing official, Stephen J. Fitcher, issued an evaluation that rated GSC's performance on the Consolidated Medical Clinic Project as "Marginal."  Am. Compl. Ex. 5.  The performance evaluation stated "INCOMPLETE-RATED " at the top of the page and did not contain the signature of the rating official.  *Id.*  Plaintiff alleges that this was the final evaluation; Defendant contends this was a proposed final evaluation.

In response to the February 23 evaluation, John Phillips, Plaintiff's Vice President, wrote Contracting Officer Susie Conner on March 18, 2011, alleging that the performance evaluation contained "mistakes of fact" and did "not follow correct procedures..."  Am. Compl. Ex. 1 at 1.  Specifically, the letter alleged several "Mistakes in Procedures," including (1) the Navy did not complete the evaluation within 60 days of the beneficial occupancy date; (2) the Navy did not discuss the performance evaluation at the pre-construction conference; (3) the assessing official, Mr. Fitcher, was not involved in "monitoring...the project until project closeout," Am. Compl. Ex. 1 at 2; (4) the Navy failed to give GSC information of any review under NAVFAC INST 4335.4 ¶ 5, which outlines the procedures for preparing a performance evaluation; and, (5) the Navy did not apprise GSC that it would receive anything less than a satisfactory rating.  The letter included GSC's response to the assessing official's remarks.  Am. Compl. Ex. 1.

The Navy issued an evaluation on May 20, 2011, that gave Plaintiff a "Marginal" rating.  Am. Compl. Ex. 6.  This evaluation indicated that it was "FINAL" at the top of the page; it was electronically signed by both Susie Conner and Stephen J. Fitcher, and contained an additional section of "Contractor Remarks" that was not included in the February 23 evaluation.  *Id.*  The May evaluation also contained a section of "Reviewer Remarks" indicating that an individual had reviewed the ratings and contractor's response and agreed with the assessing official rating.  *Id.*

Plaintiff filed a complaint in this Court on June 21, 2011, and an amended complaint on November 21, 2011.  The amended complaint alleges the Navy failed to follow the applicable statutes, regulations, policies, procedures and instructions in preparing and disseminating the evaluations, and that as a result of these failures Plaintiff was injured in its business and ability to obtain other government contracts.  The amended complaint also alleges that the Navy's factual analysis and conclusions were clearly erroneous, arbitrary, and capricious.  Plaintiff requests the following relief from the Court: Directing the Navy to rescind the final evaluation and remove it from CCASS; finding the final evaluation was not conducted in accordance with the applicable laws, regulations, policies, procedures and instructions; finding the final evaluation is clearly erroneous, arbitrary and capricious; and directing the Navy to have the final evaluation reviewed at a level above the Contracting Officer.

## II.  Relevant Regulations

Pursuant to NAVFACINST 4335.4 ¶ 4(c), the final evaluation process must include:

(a) preparation of the evaluation by the technical/contractual team,
(b) review and approval by the reviewing official,
(c) distribution of a copy to the contractor,
(d) response from contractor if evaluation is marginal or unsatisfactory,
(e) addressing of comments and/or meeting with contractor if necessary and,
(f) submission of the evaluations to CCASS database.

## DISCUSSION

## I.  Standard of Review

In deciding a motion to dismiss under the Rules of the U.S. Court of Federal Claims (RCFC) Rule 12(b)(1), "determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed."  *Holley v. United States*, 124 F.3d 1462, 1464 (Fed. Cir. 1997) (citations omitted).  The Plaintiff bears the burden of showing that the court possesses jurisdiction over its claims.  *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  Plaintiff must carry this burden by a preponderance of the evidence.  *Id.*

The court must treat the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).  Pursuant to RCFC 10, where a plaintiff has attached materials to his complaint, this court properly may consider these materials part of the complaint on a motion to dismiss.  RCFC 10(c); *see also Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1342 n.4 (Fed. Cir. 2006) (construing Rule 10(c) of the Federal Rules of Civil Procedure).

## II.  Ripeness

The Contract Disputes Act (CDA) sets forth the requirement that before filing suit in this court a contractor must have submitted a claim that was either denied or did not receive a response for at least 60 days.  41 U.S.C. §§ 7103(a), 7104(b).  Plaintiff asserts that it met this requirement when it filed suit more than 60 days after its March 18, 2011, submission requesting a Contracting Officer's final decision.  Plaintiff characterizes the February 23, 2011, evaluation as the "final" evaluation and the March 18 letter as a request for a final decision on the final evaluation.

The attachments to the complaint make clear that the May 20 evaluation, not the February 23 evaluation, was the "final" evaluation.  First, the Navy Regulations set forth a procedure for contractor review and feedback on proposed final evaluations with "Marginal" or "Unsatisfactory" ratings before the final evaluation is signed by the reviewing official and entered into CCASS.  *See* NAVFACINST 4335.4 ¶ 4(c).  The February 23 draft final evaluation proposed a "Marginal" rating, so the Navy was required to receive contractor feedback before issuing the final evaluation.

Second, the contents of the February 23 evaluation make clear that it was merely a proposal.  It stated that it was "INCOMPLETE-RATED," indicating that the evaluation's "Marginal" rating required an additional step to allow contractor remarks to be considered and included in the final evaluation.  *See* Am. Compl. Ex. 5.  The February 23 evaluation also was not signed and did not contain the "Contractor Remarks" as required by NAVFACINST 4335.4 ¶ 4(c).  *Id.*  The May 20 evaluation contained a section of "Reviewer Remarks" that demonstrates the feedback process had occurred and had been incorporated into the May 20 final evaluation.

Because the February 23 evaluation was merely a proposed final evaluation, it is debatable whether Plaintiff's March 18 letter can be considered a "claim."  In the context of claims for changes to a contract, the Court looks at "whether a letter clearly and unequivocally (1) asserted specific rights; (2) requested specific relief of a sum certain; (3) requested a final decision; (4) whether the letter, in conjunction with the totality of the circumstances, was sent in the context of an ongoing dispute between the parties as to which they had previously abandoned negotiations."  *M. Maropakis Carpentry, Inc. v. United States*, 84 Fed. Cl. 182 (2008) (*quoting Sun Eagle Corp. v. United States,* 23 Cl. Ct. 465, 471 (1991)).

Plaintiff asserted specific rights and requested a final decision in the March 18 letter.  Because the letter requested changes to the evaluation and not monetary relief, the second factor is not relevant.  Whether the March 18 letter is a "claim" turns upon examination of the fourth factor, "whether the letter, in conjunction with the totality of the circumstances, was sent in the context of an ongoing dispute between the parties as which they had previously abandoned negotiations."  In *Dawco Construction Inc. v. United States,* the court discussed whether any of the submissions at issue could have been a "claim."  *Dawco Const.*, 930 F.2d 872 (Fed. Cir. 1991).  The Court concluded that the plain language of the Federal Acquisition Regulations required that, for a submission to be considered a "claim," "[a] contractor and the government contracting agency must already be *in dispute* over the amount requested...Unilateral cost proposals or correspondence suggesting disagreement during negotiations, while they may ultimately lead to a dispute, do not, for purposes of the Act, satisfy the clear requirement that the request be in dispute."  *Id.* at 878 (*citing Mayfair Construction Co. v. United States,* 841 F.2d 1576, 1577 (Fed. Cir. 1988)).

Plaintiff's March 18 submission was a "unilateral" request to change the content of the final evaluation, and there is no evidence that the parties had "abandoned" negotiations as to what was to be included in the evaluation.  In fact, the March 18 letter was part of the required feedback process prior to issuing the May 20 final evaluation.  It cannot be considered a "claim" as required by the CDA, but rather constituted contractor feedback in response to a proposed "Marginal" rating as required by NAVFACINST 4335.4.  Though in its March 18 letter Plaintiff raised the same grievances with the proposed final evaluation that it raises in its complaint, it never submitted a CDA "claim" in response to the May 20 evaluation.  Plaintiff has not exhausted its administrative remedies pursuant to the CDA and may not bring suit in the Court at this time.

## CONCLUSION

For the reasons stated above, the Court **GRANTS Defendant's Motion to Dismiss without prejudice.**  The Clerk is ordered to enter judgment for Defendant.  Parties are to bear their own costs.

**IT IS SO ORDERED.**

  s/ Lawrence M. Baskir  
LAWRENCE M. BASKIR  
Judge